NOT FOR PUBLICATION

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| FRANCISCA SALVADOR,<br><br>　　　　　　　Plaintiff,<br><br>　　v.<br><br>FEDLOAN SERVICING *et al.*,<br><br>　　　　　　　Defendants. | Civ. No. 20-20568<br><br>OPINION |

THOMPSON, U.S.D.J.

### INTRODUCTION

　　This matter comes before the Court upon the Motion for Judgment on the Pleadings filed by Defendant Pennsylvania Higher Education Assistance Agency, Inc. d/b/a FedLoan Servicing ("FedLoan"). (ECF No. 8.) Plaintiff Francisca Salvador ("Plaintiff") opposes. (ECF No. 24.) The Court has decided the Motion based on the written submissions of the parties and without oral argument, pursuant to Local Civil Rule 78.1(b). For the reasons stated herein, the Motion for Judgment on the Pleadings (ECF No. 8) is granted.

### BACKGROUND

**I.　Factual Background**

　　This case is about the accuracy of credit reporting under the Fair Credit Reporting Act ("FCRA"). FedLoan is a "student loan servicer" that "furnishes information to various consumer reporting agencies regarding [its] transactions with consumers." (Compl. ¶ 5, ECF No. 1.) Defendants Equifax Information Services, LLC ("Equifax") and TransUnion, LLC ("TransUnion") are two "consumer reporting agenc[ies]" to whom FedLoan furnishes consumer

information. (*Id.* ¶¶ 6–7.) Equifax and TransUnion are "engaged in the business of assembling, evaluating, and disbursing information concerning consumers for the purpose of furnishing consumer reports . . . to third parties," including creditors. (*Id.* ¶¶ 6–7, 14.)

At some point before May 2014, Plaintiff incurred a student loan debt, which FedLoan serviced. (*Id.* ¶ 8; Def.'s Ex. A, at 4–5, ECF No. 8-1.)[1] FedLoan reported Plaintiff's transactions on that loan to Equifax and TransUnion, (Compl. ¶¶ 5, 11), and attached this reporting (the "Report") to its Motion. (Def.'s Ex. A, at 4–5.) The "Payment History" section of the Report states that, from December 2011 through April 2013, "No Payment history is available." (*Id.* at 4.) In May and June 2013, the Report states "0-0 payments past due." (*Id.*) Plaintiff began falling behind in payments in July 2013, demonstrated by the fact that the Report lists her "days past due date" in increasing increments from July 2013 through April 2014. (*Id.* at 4–5.)[2] As of May 2014, the Report lists her "Payment Rating" as "6-180 or more days past the due date," (*id.* at 5), which means that FedLoan was reporting her as "180 days delinquent on [her] account," (Opp'n at 2).[3] In May 2014, the Report reads "Account was in collection." (Def.'s Ex. A at 4.) There is no payment history reporting thereafter. (*See id.*)

Around May 2014, Plaintiff's loan account was "closed and transferred to another lender," and she was "no longer obligated to make monthly payments" on the debt to FedLoan.

---

[1] The pages to which the Court refers are the CM/ECF page numbers.

[2] The Report lists her payment ratings as: "2-60-89 days past due date" in July 2013; "3-90-119 days past due date" in August 2013; "4-120-149 days past due date" in September 2013; "5-150-179 days past due date" in October 2013; and "6-180 or more days past due date" from November 2013 through May 2014. (Def.'s Ex. A at 4–5.)

[3] Based on the pleadings and the Report, it appears that the operative "days past due date" are the latter numbers, e.g., 60-89; 90-119; 120-149; 150-179; and 180 or more. (*See* Opp'n at 2 (describing the reported payments as "180 days delinquent").)

(*See id.*; Compl. ¶¶ 9–10.) The reported "Status" of Plaintiff's account is: "Claim filed with government for insured portion of balance on a defaulted loan." (Def.'s Ex. A at 5.) In two "Special Comment" sections, the Report reads: "Student loan assigned to government." (*Id.* at 4, 5.) Plaintiff does not allege that she paid off the debt prior to its transfer. (*See generally* Compl.)

Since the transfer of Plaintiff's debt, FedLoan continues to credit report to Equifax and TransUnion. (*Id.* ¶ 11.) In addition to the payment history described above, the Report contains other information regarding Plaintiff's account, referred to as "Tradeline Information." (Def.'s Ex. A at 5.) The "Tradeline Information" section reports that Plaintiff's account was "Closed" as of May 20, 2014; and has a "Current Balance" of "$0.00," a "Scheduled Monthly Payment Amount" of "$0.00," an "Amount Past Due" of "$0.00," and a "Payment Rating" of "6-180 days past the due date." (*Id.*) The "Date of Account Information" is May 31, 2014. (*Id.*)

FedLoan provides the Report to TransUnion and Equifax, who then report Plaintiff's credit history as "late by greater than 120 days" to creditors. (*See* Compl. ¶ 11; Opp'n at 8 n.2.) In May 2019, Plaintiff notified Equifax and TransUnion of this "erroneous information," who forwarded the dispute to FedLoan. (Compl. ¶ 15.) Plaintiff alleges that the tradeline of "payment status of 'Late 120 Days' is false and misleading because the balance owed to FedLoan[] is clearly and unambiguously $0.00." (*Id.* ¶ 12.)

## II.     Procedural History

On December 30, 2020, Plaintiff filed the Complaint in the United States District Court for the District of New Jersey, alleging that Defendants FedLoan, Equifax, and TransUnion violated the FCRA, 15 U.S.C. §§ 1681 *et seq.* (*Id.* ¶ 1.) Specifically, Plaintiff alleges that FedLoan "willfully and negligently" (1) failed to "conduct an investigation of the inaccurate information that Plaintiff disputed;" (2) failed to "report the trade line as one in dispute;" and (3)

continues to report Plaintiff's payments status as late by greater than 120 days when she no longer owes money to FedLoan, in violation of 15 U.S.C. §§ 1681*o*, 1681n, and 1681s-2(b). (*Id.* ¶¶ 22–27.) Because of Fedloan's "inaccurate reporting of Plaintiff's late payment status," Plaintiff claims that she "is made to appear to creditors as having a poor history of timely payments," and has suffered "injury to credit worthiness," "increased difficult obtaining credit," and "embarrassment, humiliation, and other emotional injuries." (*Id.* ¶¶ 13, 14, 18.)

On March 29, 2021, FedLoan answered the Complaint. (ECF No. 4.) On April 9, 2021, FedLoan filed a Motion for Judgment on the Pleadings (ECF No. 8), on May 21, 2021, Plaintiff opposed, and on September 17, 2021, FedLoan submitted supplemental authority regarding its Motion. (ECF No. 39). FedLoan's Motion is presently before the Court.

## **LEGAL STANDARD**

"After the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). "A motion for judgment on the pleadings under Rule 12(c) 'is analyzed under the same standards that apply to a Rule 12(b)(6) motion.'" *Wolfington v. Reconstructive Orthopaedic Assocs. II PC*, 935 F.3d 187, 195 (3d Cir. 2019) (quoting *Revell v. Port Auth. of New York, New Jersey*, 598 F.3d 128, 134 (3d Cir. 2010)). "Judgment will not be granted unless the movant 'clearly establishes there are no material issues of fact, and [the movant] is entitled to judgment as a matter of law.'" *Bedoya v. Am. Eagle Express Inc.*, 914 F.3d 812, 816 n.2 (3d Cir. 2019) (quoting *Sikirica v. Nationwide Ins. Co.*, 416 F.3d 214, 220 (3d Cir. 2005)). "In considering a motion for judgment on the pleadings, [the Court] must accept as true all facts presented in the complaint and answer and draw all reasonable inferences in favor of the non-moving party . . . ." *Id.* (citation omitted).

## DISCUSSION

**I.     Matters Outside of the Pleadings**

The Court may consider the Report in determining this Motion. While generally, "[i]n deciding a Rule 12(c) motion, [courts do] not consider matters outside of the pleadings," *Mele v. Fed. Reserve Bank of N.Y.*, 359 F.3d 251, 257 (3d Cir. 2004), courts may consider documents that are "integral to or explicitly relied upon in the complaint," *Wolfington*, 935 F.3d at 195.

Plaintiff alleges that the Report contains "false, misleading, and inaccurate" information. (Compl. at ¶ 21.) By calling into question the Report's accuracy, Plaintiff has "invited [the Court's] consideration" of the Report. *See Spector Gadon & Rosen, P.C. v. Fishman*, 666 F. App'x 128, 131 (3d Cir. 2016). Thus, the Report is "integral to or explicitly relied upon in the complaint," *see Wolfington*, 935 F.3d at 195, and the Court considers it, alongside the pleadings, in its determination of this Motion.

**II.    The Fair Credit Reporting Act**

The FCRA protects consumers from the transmission of inaccurate information by establishing credit reporting practices that ensure "the confidentiality, accuracy, relevancy, and proper utilization of [consumer] information." 15 U.S.C. § 1681(b). Under the FCRA, consumer reporting agencies ("CRAs") "collect consumer credit data from 'furnishers,' such as banks and other lenders, and organize that material into individualized credit reports, which are used by commercial entities to assess a particular consumer's creditworthiness." *Seamans v. Temple Univ.*, 744 F.3d 853, 860 (3d Cir. 2014).

A "furnisher of information," or an entity that "furnish[es] any information relating to a consumer to any [CRA]," may not provide consumer information to a CRA if it "knows or has reasonable cause to believe that the information is inaccurate." 15 U.S.C. § 1682s-2(a)(1)(A). If

5

a CRA notifies a furnisher of a "dispute with regard to the completeness or accuracy of any information," the furnisher must: "conduct an investigation with respect to the disputed information;" "review all relevant information provided by the [CRA];" "report the results of the investigation to the [CRA];" and, "if the investigation finds that the information is incomplete or inaccurate, report those results to all other [CRAs who received that information]" and "modify," "delete," or "permanently block the reporting of" the information. *Id.* § 1681s-2(b)(1)(A)–(E).

To state a claim under § 1681s-2(b), a plaintiff must allege that: "(1) [she] sent notice of disputed information to a [CRA], (2) the [CRA] then notified the defendant furnisher of the dispute, and (3) the furnisher failed to investigate and modify the inaccurate information." *Gittens v. Sterling Jewelers Inc.*, 2016 WL 828098, at *2 (D.N.J. Feb. 29, 2016); *see also SimmsParris v. Countrywide Fin. Corp.*, 652 F.3d 355, 358 (3d Cir. 2011) (stating that the furnishers' duty to investigate is "implicated only after receiving notice . . . of a dispute with regard to the completeness or accuracy of any information"). As a threshold matter, "[p]laintiffs must plead facts supporting a conclusion that [a furnisher of information] furnished incomplete or inaccurate information to [a CRA]." *Fumelus v. Experian Info. Sols., Inc.*, 2019 WL 1509140, at *4 (D.N.J. Apr. 5, 2019) (citing *Seamans*, 744 F.3d at 866–67 ("15 U.S.C. § 1681s-2(b) . . . requires complete and accurate post-dispute reporting of debts.")).

### III.   Inaccurate or Materially Misleading Information

Information is inaccurate if it is "factually incorrect" or "technically correct" but "through omission, it creates a materially misleading impression." *Seamans*, 744 F.3d at 865. "Whether technically accurate information [is] 'misleading in such a way and to such an extent that [it] can be expected to have an adverse effect' is generally a question to be submitted to the jury." *Id.* (quoting *Gorman v. Wolpoff & Abramson, LLP*, 584 F.3d, 1147, 1163 (9th Cir. 2009)

6

(quoting *Saunders v. Branch Banking & Tr. Co. Of VA*, 526 F.3d 142, 150 (4th Cir. 2008)). However, numerous courts in the Third Circuit and across the nation have found that, where "the parties provide the reported information in dispute and the court determines only one reasonable interpretation of the report exists, a court may determine the accuracy of the report as a matter of law." *Samoura v. Trans Union LLC*, 2021 WL 915723, at *4 (E.D. Pa. Mar. 10, 2021); *See also, e.g.*, *Schweitzer v. Equifax Info. Sols. LLC*, 441 F. App'x 896, 902 (3d Cir. 2011); *Bibbs v. Trans Union LLC*, 521 F. Supp. 3d 569, 579 (E.D. Pa 2021); *Gross v. Priv. Nat'l Mortg. Acceptance Co., LLC*, 512 F. Supp. 3d 423, 427 (E.D.N.Y. 2021); *Gibbs v. TransUnion, LLC*, 2021 WL 4439546, at *2 (E.D. Pa. Sept. 28, 2021); *Egues v. Nelnet Servicing, LLC*, 2021 WL 3486904, at *3 (D.N.J. Aug. 9, 2021); *Ostrander v. Trans Union LLC*, 2021 WL 3271168, at *1 (E.D. Pa. July 30, 2021); *Parke v. Trans Union, LLC*, No. 2:20-cv-04487-ER (E.D. Pa. Mar. 5, 2021); *Settles v. Trans Union, LLC*, 2020 WL 6900302, at *5 (M.D. Tenn. Nov. 24, 2020).

"In determining whether technically correct information on a credit report is misleading, courts consider the credit report in its entirety rather than in a single isolated field." *Ostrander*, 2021 WL 3271168, at *7 (citing to *Schweitzer*, 441 F. App'x at 900–901); *see also Egues*, 2021 3486904, at *3 (determining accuracy of report "when read as a whole"); *Samoura*, 2021 WL 915723, at *7 (rejecting plaintiff's argument that it "limit [its] review to the Pay Status [and] . . . ignore all other tradelines"); *Washington v. FedLoan Servicing*, 2021 WL 4077952, at *9 (E.D. Pa. Aug. 30, 2021) ("In determining whether reported information is misleading, the Court must view the information in a credit report from the perspective of a reasonable creditor.").

Several cases are instructive in determining whether a credit report, when viewed in its entirety, is accurate as a matter of law: In *Schweitzer*, the Third Circuit affirmed a district court's

7

ruling that a plaintiff's accounts "were not reported inaccurately within the meaning of the FCRA," despite the fact that the plaintiff had "paid in full" and the report stated that "the account had been 'Over 120 Days Past Due.'" 441 F. App'x at 901–902. The Third Circuit reasoned that the report was accurate because other fields, *e.g.*, "Account Paid/Zero Balance" "properly reflected" that the plaintiff had paid in full. *Id.* at 902.

Additionally, on facts nearly identical to Plaintiff's, "district courts both in this Circuit and throughout the country have routinely granted defendants' dispositive motions on plaintiffs' § 1681s-2(b) claims." *Washington*, 2021 WL 4077952, at *10. These courts have found that "the reporting of terms of a closed account with zero balance, yet with the pay status listed as past due is not 'patently incorrect' or 'misleading.'" *Id.* (collecting cases). Such reporting can be characterized as "the mere reporting of historical information on a closed account," not as inaccurate or misleading. *Egues*, 2021 WL 3486904, at *3 (quoting *Robinson v. WebBank*, 2020 WL 8225363, at *3 (N.D. Ga. Nov. 17, 2020)).

Accordingly, where a student's debt "was transferred to another lender," a court in this district found that the loan servicer's report was accurate as a matter of law when it indicated: "1) Plaintiff had an account with [the servicer]; 2) that account had been 'closed due to transfer' in May 2015; 3) the 'Balance Amount' was '$0'; 4) [the servicer] had last verified the balance on or about May 16, 2015; and 5) the 'Payment Status' was 'Late 120 Days.'" *Id.* at *1, *3. Similar to Plaintiff here, the plaintiff in *Egues* alleged that the servicer furnished inaccurate information by "reporting that Plaintiff [was] *currently* 120 days delinquent on an account which [she] was no longer obligated to make payments." *Id.* at *3 (emphasis in original). In rejecting that argument, the court stated, "to adopt Plaintiff's position, [the] Court would have 'to read in

8

nonexisting present tense language' into the information [that the servicer] furnished regarding an account it closed in 2015." *Id.* (quoting *Bibbs*, F. Supp. 3d at 580).

Numerous other courts have taken this approach. *E.g.*, *Bibbs*, F. Supp. 3d at 580–81 (finding that a report was accurate as a matter of law, despite reporting "120 Days Past Due" because the "Date Updated field, the Date Closed field, the Balance field, the remark 'ACCT CLOSED DUE TO TRANSFER,' and the lack of ratings information beyond March 2018" all indicated that the report contained accurate, historical information); *Samoura*, 2021 WL 915723, at *7 (determining that, after "view[ing] the account information given to the creditor in its entirety" and assessing other fields on the report, the report "unequivocally confirm[ed] the account [was] closed with a zero-dollar balance"); *Washington*, 2021 WL 4077952, at *10–11 (finding that "[t]here [was] simply nothing in [the] [p]laintiff's credit report that a reasonable jury could find misleading" when her "loan was transferred to the [Department of Education]," and the "tradeline noted a payment rating of 6-180 days or more past the due date, but also that the current balance on her loan was $0.00, the scheduled monthly payment was $0.00, the actual payment amount was $0.00, the amount past due was $0.00, and that the status of the account was 05- closed due to transfer"); *Ostrander*, 2021 WL 3271168, at *8 (finding that, when the plaintiff's credit report indicated a zero-dollar balance, was "60 [d]ays" past due, and was last updated, paid, and closed on December 1, 2013, the "only logical conclusion" from the report was "that the plaintiff was *previously* 60 days past due (i.e., as of December 1, 2013)") (emphasis in original); *Settles*, 2020 WL 6900302, at *4 (stating that "[r]eporting a 'pay status' as '120 days past due date'" when "the report provides payment history showing that Plaintiff was at least 120 days late each month from May 2013 to January 2014, states that the account was closed in February 2014, and does not provide any account payment information past that

9

date" would not "reasonably mislead a creditor to believe Plaintiff is currently past due on this loan"); *Gross v. Priv. Nat'l Mortg. Acceptance Co., LLC*, 512 F. Supp. 3d 423, 427 (E.D.N.Y. 2021) (rejecting the plaintiff's argument that reporting raised "the plausible inferene [*sic*] that a creditor could read the 'Pay Status' as a current one" when "all the other relevant entries suggest that the 'Pay Status' entry refers to a previous pay status").

## IV. The Accuracy of FedLoan's Reporting

Plaintiff contends that the Report inaccurately states that she "is currently 180 days delinquent on an account which [she] is no longer obligated to make any payments" and, even if "patently accurate," the accuracy of the Report is a question for the jury. (Opp'n at 2, 8.) FedLoan argues that Plaintiff fails to allege any inaccuracy reported by FedLoan and thus, she fails to state a claim under the FCRA. (Def.'s Br. at 6, ECF No. 8-3.)

When considering the Report in its entirety, the Court finds that is not inaccurate and it does not create a materially misleading impression that Plaintiff is *currently* behind on payments to FedLoan. *See Samoura*, 2021 WL 915723, at *7. Nowhere in the Report does it say that the payment status is current. (*See* Def.'s Ex. A.) Rather, it states that Plaintiff's account was "Closed" as of May 20, 2014, has a "Date of Account Information" of May 31, 2014, has a "Current Balance" of "$0.00," and was "assigned to government." (*Id.* at 5.) To interpret the Report to mean that Plaintiff *currently* owes money on this account would require the Court to "read in nonexisting present tense language" regarding an account that FedLoan closed in 2014. *See Egues*, 2021 WL 3486904, at *3 (quoting *Bibbs*, F. Supp. 3d at 580).

Further, the Report provides Plaintiff's entire payment history, including her nonpayment from July 2013 through May 2014 and that her account went into "collection" and was "transferred to government." (*See* Def.'s Ex. A at 4–5.) The Court views this information as the

reporting of Plaintiff's past transactions, or the "historical reporting on a closed account," which courts have determined is not inaccurate or misleading. *See Egues*, 2021 WL 3486904, at *3.

Plaintiff cites to cases in which courts declined to determine the accuracy of reporting as a matter of law. (Opp'n at 5–12 (citing to *Gatanas v. Am. Honda Fin. Corp.*, 2020 WL 7137854, at *1, *7 (D.N.J. Dec. 7, 2020) (declining to find a report accurate as a matter of law where it stated that the plaintiff's "account was closed with a $0 balance but the account was '30-59 days late'"); *Huggins v. FedLoan Servicing*, 2020 U.S. Dist. LEXIS 229290, at *17 (D.N.J. Dec. 2, 2020) (declining to find, "at the pleading stage and without the disputed tradeline submitted in the record, that a tradeline indicating that a consumer is 120 days late, after the consumer had transferred the debt, is not misleading as a matter of law"); *Daugherty v. Ocwen Loan Servicing, LLC*, 701 F. App'x 246, 256 (7th Cir. 2017) (upholding a jury verdict in favor of the plaintiff where the plaintiff brought his account current after falling delinquent on several payments, yet the credit reporting agency continued to report him as delinquent); *Macik v. JPMorgan Chase Bank*, 2015 WL 12999728, at *3–4 (S.D. Tex. May 28, 2015) (determining that the accuracy of the report presented a triable fact where the report stated that the plaintiff was *currently* delinquent, as of the date of the reporting, on a mortgage that she had paid four years prior); *Barrow v. TransUnion, LLC*, 2021 WL 1424681, at *5 (E.D. Pa. Apr. 13, 2021) (finding that, "[r]eading the report as a whole, [it could] conceive of several different, plausible meanings which may be ascribed to [the report] from the perspectives of a typical, reasonable reader and a typical, reasonable creditor"); *Soler v. Trans Union, LLC*, 2020 WL 7237256, at *3 (C.D. Cal. Dec. 1, 2020) (denying the motion to dismiss because "[w]ithout [the defendant's] annotation, explanation, and supplemental documentation, a jury could find that the Credit Report on its face is misleading in such a way that it adversely affects [the plaintiff's] credit").)

These cases are distinguishable from the matter presently before the Court: *Gatanas* and *Huggins* are distinguishable because there, the parties did not attach the operative reporting for the courts to review when evaluating the motions to dismiss. *See Gatanas*, 2020 WL 7137854, at *4; *Huggins*, 2020 U.S. Dist. LEXIS 229290, at *17–18. Absent the reports, the courts relied on only the plaintiffs' allegations, "construing th[e] allegations and drawing all reasonable inferences in favor of [the plaintiffs]." *Huggins*, 2020 U.S. Dist. LEXIS 229290, at *16; *see also Samoura*, 2021 WL 915723, at *6 ("Courts have also declined to enter judgment as a matter of law where the parties elected not to provide exhibits showing the disputed information at the pleading stage.") Because FedLoan submitted the disputed Report (*See* Def.'s Ex. A), the Court may review the Report and determine that "'taken as a whole,' [it is] not materially misleading." *See Huggins*, 2020 U.S. Dist. LEXIS 229290, at *15 (noting that, where a plaintiff attaches the operative reporting to the complaint, the court may review it on a motion to dismiss) (quoting and citing to *Settles*, 2020 WL 6900302, at *4).

Additionally, *Daugherty*, *Macik*, *Barrow*, and *Soler* are distinguishable because in those cases, the plaintiffs clearly alleged that they had paid their accounts in full. *Daugherty*, 701 F. App'x at 249; *Macik*, 2015 WL 12999728, at *1; *Barrow*, 2021 WL 1424681, at *1; *Soler*, 2020 WL 7237256, at *3. Because those plaintiffs had paid off their debt, the reports inaccurately stated that they were "past due" on their payment. *Cf. Bibbs*, 521 F. Supp. 3d at 580 (citing to *Soler*, 2020 WL 7237256, at *1 and reasoning that, where a "consumer alleged she 'fully satisfied' her disputed account," the report could not be "accurate" if it reported that she was "120 Days Past Due"). Here, however, the Court finds no factual basis that Plaintiff paid off her overdue loans before they were transferred. Thus, the only plausible reading of "180 days past due date," when read alongside the other tradelines, is that Plaintiff was in fact overdue on her

12

payments when FedLoan transferred her account in May 2014. (*See* Def.'s Ex. A at 4–5.) This is accurate because it reflects "historical reporting on a closed account." *See Egues*, 2021 WL 3486904, at *3.

In reaching this decision, the Court joins the dozens of other district courts that have determined that a report with a "past due" pay status, alongside other information to indicate that the consumer does not *currently* owe payments on that account, *e.g.*, the loan was transferred to another servicer, the consumer owes $0.00, and the account is closed, is not inaccurate or misleading. *Washington*, 2021 WL 4077952, at *10–11. Additionally, because Plaintiff has not alleged the threshold showing of inaccurate or misleading reporting, the Court does not address whether she has adequately pled actual damages or willful violation. (*See* Def.'s Br. at 16–22.)

## V.     Leave to Amend

The Court bases its decision to grant FedLoan's Motion on its determination that Plaintiff was, in fact, overdue on her payments when FedLoan transferred her account around May 2014 and that the Report reflects her overdue payments as of that date. The Court grants Plaintiff leave to amend to allege facts that may alter the Court's analysis.

## CONCLUSION

For the foregoing reasons, FedLoan's Motion for Judgment on the Pleadings (ECF No. 8) is granted with leave to amend. An appropriate Order will follow.

Date: <u>October 28, 2021</u>                                          <u>*/s/ Anne E. Thompson*   </u>
                                                                                    ANNE E. THOMPSON, U.S.D.J.

13